## Case No. 7,178.

JAMES v. ATLANTIC DELAINE CO. et al.

[3 Cliff. 622.] 1

Circuit Court, D. Rhode Island. June Term, 1873.2

---

1 [Reported by William Henry Clifford, Esq., and here reprinted by permission.]

2 [Reversed in 94 U. S. 207.]

Jas. H. Parsons, Thos. A. Jenckes, and Caleb Cushing, for complainants.

A. Payne, R. W. Greene, and B. R. Curtis, for respondents.

Before CLIFFORD, Circuit Justice, and KNOWLES, District Judge.

CLIFFORD, Circuit Justice. Questions of considerable difficulty are presented in the case, which arise out of the application for a review, and others arise upon the exceptions filed by the respective parties both to the original and supplemental reports of the master, all of which are still open for consideration, as it was not intended that any of them, except the one withdrawn by the complainant, should be superseded by any subsequent order in the cause. Before attempting to examine the several exceptions to the master's report, it becomes necessary to decide whether the view of the court as embodied in the decretal order is correct, as that presents a preliminary question which, if decided in favor of the respondents, will terminate the controversy.

Coming to the application for review, the question is, whether the statement of the accounts furnished by the treasurer of the corporation to the assignee of the original complainant was or was not false, as found by the court in the opinion delivered at the time the decretal order was entered. Aid in solving the questions presented will be derived from a proper understanding of the exact relations which the parties sustained to each other in the original transactions, out of which the controversy has arisen; and for that purpose it will be necessary to refer very briefly to the original record, as those relations commenced in an enterprise which originated even before the respondent company was incorporated. (At this point the court recited the facts substantially as they appear in the statement.)

Facts and circumstances were introduced at the original hearing sufficient to satisfy the court that the charge made in the bill of complaint was true, and the court accordingly entered the decretal order, which is the subject of complaint in the application for a rehearing.

Having carefully weighed the facts and circumstances introduced in evidence, the court came to the conclusion that the release given by the assignee to the company was void, and adjudged and decreed that the same be set aside as having been obtained by fraudulent representations and concealments. Certain suggestions were made at the recent argument to the effect that the exhibit in question was not properly before the court at the final hearing, when the decretal order under revision was entered; but it cannot be necessary to consume time in discussing that proposition, as the record is full of evidence to refute it, and to show that both parties, as well as the court, treated it as a most material part of the proofs of the case. Undoubtedly it first came into the case as an exhibit to the deposition of the treasurer of the company, and it is equally true that certain portions of his deposition were excluded as unauthorized at that time by the acts of congress; but the record shows that the time for taking proofs was subsequently enlarged, which enabled the respondents to retake that deposition and some others which had been excluded under the same ruling, congress having in the mean time made parties competent witnesses in equity suits as well as in actions at law. Nor is there any doubt entertained that the decision was correct upon the evidence then before the court in entering the decretal order. Much discussion on that topic is unnecessary, as the proposition is scarcely denied.

Suppose that it is so, still it is insisted that the new evidence taken under the recent leave granted for that purpose is sufficient to show that the finding of the court was erroneous; but the court is not able to concur in that view. Instead of that the new evidence convinces the court that the original decision was correct, and that the release executed by the assignee was properly set aside, as having been obtained by fraudulent representations and concealment. Considerable embarrassment, it must be confessed, was experienced in conducting the original investigation, as the books of the company were not before the court; but the facts and circumstances adduced in evidence were amply sufficient to convince the court that the account exhibited was not an official account made by the company or by its managers, and that it was not an account copied from any official statement of the affairs of the company in respect to its dealings with the original complainant. All doubt upon the subject is now removed, as the party who furnished it to the assignee, as the basis of the settlement, confesses under oath that it was transcribed from a private memorandum kept by him, and that it nowhere appears on the books of the company as an exhibit of their affairs, which, of itself, in view of the circumstances attending the settlement and transfer, is sufficient to justify the finding of the court, as it false-

ly purports to be "a true copy from the books." Reference to the charter will show that the annual meetings·of the company were required to be held on the first Wednesday of February in each year, and the by-laws require that the directors at each annual meeting should give a summary account of their management to the company for the preceding year, and at all other times when required by the stockholders representing one third of the capital stock. Apart from that it was also made the duty of the treasurer to render to the directors semi-annually an account of the affairs of the company, and at all other times when required, and at each annual meeting to exhibit his account to the corporation. Inasmuch as this statement was furnished as a true copy from the books, it must be assumed that the assignee received it as an official account, made under the obligation of law and of the contract between the parties to which it related, and that he gave it full credence as an official exhibit made by the proper officers of the company in the performance of their appropriate duties.

Nothing of the kind, however, appears on any of the books, and the party who furnished it testifies under oath that "it came from my private letter book." Items of large amount were included in the statement, which do not appear in the books at all, and some of those which do appear are erroneous in large amounts, as is evident from the proofs exhibited in the record, thus fully justifying the remark of the court in the former opinion that the statement was inaccurate in large amounts and greatly to the prejudice of the original complainant. Viewed in every aspect, it is the conclusion of the court, not only that it was false, but that it was furnished with the intent to deceive and defraud by promoting a settlement prejudicial to the original complainant and more favorable to the respondent corporation than truth and justice would admit.

In such a case the settled rule is, that the assignor is entitled to take the residue of the estate after his debts outstanding at the date of the assignment are paid. Halsey v. Fairbanks [Case No. 5,964]; Brashear v. West, 7 Pet. [32 U. S.] 608.

By the extinguishment of the debts the assignee became the trustee of the assignor, and the latter became clothed with all the rights and powers of a cestui que trust, to the same extent as the creditors previously had been whose claims he had extinguished. Lazarus v. Commonwealth Ins. Co., 5 Pick. 81. Consequently the original complainant was the proper party to come into a court of equity and pursue the trust estate, it appearing that it had been fraudulently or improperly parted with by the trustee. Story, Eq. Pl. § 221; Oliver v. Piatt, 3 How. [44 U. S.] 400; Lewin, Trusts, 730; Hovenden v. Annesley, 2 Schoales & L. 633.

Tested by these considerations, the court is of the opinion that its finding as exhibited by the decretal order is correct, and that the original complainant was and is entitled to the relief therein adjudged and decreed. Renewed reference to the defences set up in the answer will not be necessary, as those matters were fully considered in the former opinion, to which reference is made as expressive of the present conclusions of the court. The complainant being thus entitled to relief, the only remaining question of much importance is, what is the proper measure of that relief, which is a question of great difficulty and embarrassment.

Twice the court has referred the case to a master, with a view to solve the difficulty and to discover the true theory of doing justice between the parties without complete success, since the exceptions which accompany the respective reports make it necessary for the court to adjudicate the whole controversy to the same extent as if no reference had been made.

Separate examinations of the several exceptions under the circumstances will not be attempted, because it would extend the opinion to an unreasonable length without accomplishing anything of value to either party. Such an investigation would not serve any useful purpose, because neither the reports of the master, nor the exceptions, nor both combined, are of a character to enable the court to come to a satisfactory result without a further reference. Much has been accomplished by the master which will be of great value in the further investigation of the subject, and the criticism of the parties, exhibited in their exceptions, will also be of service in framing a new report; but the court is not able to deduce from the record in its present condition, without performing work which belongs to a master, such a result as the court is prepared to adopt as the final decree in the case.

Governed by these considerations, the court will send the whole case to the master, with more specific instructions for a new report, and for a statement of the accounts between the parties in respect to the mortgage debt. Under the decretal order the complainant is entitled to redeem the mortgaged property just as her intestate might have done if the settlement and release mentioned in the decretal order had never been executed. The release and settlement having been set aside, because obtained by fraudulent representations and concealment, it is clear that the complainant is entitled to have an account against the respondents as against mortgagees wrongfully in possession, including the net and annual profits of the property without being accountable for the losses of subsequent years. All sums due to the mortgagee will first be charged to the mortgaged estate, as ascertained from the agreements and actual dealings of the parties, whether advanced to the actual mortgagor or his assignee. Having ascertained

the unpaid balance of the mortgage debt including interest to the present time, the master will next proceed to take an account of the net earnings of the mortgaged property, as against a mortgagee wrongfully in possession, deducting insurance, taxes, repairs, including ordinary improvements such as relate to the operative machinery and the motive power of the mill, and including all the net earnings subject to those deductions, whether actually declared as dividends or not, and however the same may have been expended or appropriated. Earnings of one year are not to be set off by the losses of a subsequent year, as the respondents are to be treated as mortgagees wrongfully in possession, but in ascertaining the earnings of a particular year, the losses of that year are to be deducted from the gross earnings in order to ascertain the net earnings of the year, as well as the cost of insurance, taxes, repairs, ordinary improvements, running expenses, and commissions. Shares of the stock paid, the complainant is entitled to recover in specie, but the complainant is not entitled to recover the thirty-seven shares never paid, as it cannot be said that those shares are wrongfully in the possession of the respondents. Nothing having been paid for the same, the court is of the opinion that no recovery can be had on account of those shares.

Estimates of earnings will be made on the basis of the shares paid, without including those not paid, and the master, on stating the accounts, will be governed by the principles herein laid down, and will deduct the amount of the unpaid mortgage debt from the amount of the earnings of the mortgaged property, adjusting interest to the present time, and state the exact amount which the complainant is entitled to recover. Interest upon the total amount of profits earned prior to the date of the decretal order, will be computed from the date of that order to the completion of the report of the master. Profits earned subsequently to the date of the decretal order will only bear interest from the close of the last year included in that computation. Power is vested in the master to call for new accounts, and to hear the parties further if necessary, to enable him to state the account as required, and he will submit his draft report to them, as required by the rules.